95-18/MEU/MAM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
Tel: (212) 425-1900
Fax: (212) 425-1901
Michael E. Unger unger@freehill.com
Manuel A. Molina molina@freehill.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAMPSKIBSSELSKABET NORDEN A/S,

                            Plaintiff,

   -against-

25,001.078  METRIC TONS OF
FLY ASH, *in rem*,

                          Defendant.

1:18-cv-414 (DNH/ATB)


**VERIFIED COMPLAINT**

Plaintiff DAMPSKIBSSELSKABET NORDEN A/S (hereinafter "Norden"), by its attorneys Freehill Hogan & Mahar LLP, as and for its Verified Complaint against the *in rem* defendant 25,001.078 METRIC TONS OF FLY ASH (hereinafter the "Cargo") alleges upon information and belief as follows:

       1.     This is an *in rem* admiralty and maritime claim against the Cargo arising within the scope of the Court's admiralty jurisdiction pursuant to 28 U.S.C. §1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. It also arises under Rule C of the Supplemental Rules of Admiralty and Maritime Claims of the Federal Rules of Civil Procedure in that it involves an arrest proceeding to enforce a maritime lien.

481851.1

1

2.      Venue is proper pursuant to 28 U.S.C. §1391 in that approximately 17,000 metric tons of the Cargo is now present within the District and jurisdiction of this Honorable Court and the remaining approximate 8,000 metric tons remains aboard the Vessel which is expected to berth in Coeymans, New York, within the District, on April 9, 2018.

## THE PARTIES

3.      At all times material hereto, Norden was and still is a corporation organized under the laws of a foreign nation with an office and place of business located at 52, Strandvejen DK-2900 Hellerup, Denmark.

4.      At all times material hereto, Norden was and still is the commercial manager and agent to ORIENT DISPATCH SHIPPING COMPANY LIMITED, the owner of the M/V ORIENT DISPATCH (hereinafter "Owner"), and is authorized by Owner to prosecute this action on its behalf.

5.      The Cargo was carried aboard the M/V ORIENT DISPATCH ("Vessel") under various bills of lading, to wit: (a) DMNAORIENTD4101, dated December 2, 2017; (b) DMNAORIENTD4102, dated December 2, 2017; and (c) DMNAORIENTD4103 through DMNAORIENTD4106, dated December 21, 2017.

## FACTUAL BACKGROUND

6.      On or about November 20, 2017, Owner, via Norden, as commercial manager and agent for the Owner, entered into a maritime contract ("Charter Party") with Spartan Materials LLC (hereinafter "Spartan"), a domestic limited liability company formed under the laws of the state of Ohio, with an office and place of business located at 5221 Creek Road, Blue Ash, OH 45242, and a registered agent, United States Corporation Agents, Inc., 3250 West Market Street,

Suite 205, Fairlawn, OH 44333, as Charterer, for the carriage of the cargo (hereinafter "the Charter Party"). *See* **Exhibit A** annexed hereto.

7.    As per the terms of the Charter Party, Spartan loaded the Cargo at the Indian ports of New Mangalore and JSW Jaigarh and ordered the Vessel to proceed to the Port of New Haven, Connecticut for discharge. On the Vessel's arrival at the port of New Haven, however, Spartan, for reasons unknown to Norden, was unable to arrange to discharge the Cargo.

8.    Subsequently, Spartan ordered the Vessel to proceed to the Port of Albany and await discharge instructions. Once the Vessel arrived at the Port of Albany, Spartan again did not give the Vessel instructions to discharge the Cargo.

9.    Upon information and belief, Spartan was unable to reach an agreement with the stevedores at Albany to unload the Cargo and/or the New York State Department of Environmental Conservation prevented the discharge of the Cargo because the Cargo and/or Spartan was not in compliance with environmental regulations.

10.    The Vessel then proceeded to anchor at Ambrose anchorage awaiting further instructions from Spartan.

11.    As per the terms of the Charter Party, in addition to freight Spartan was required to pay demurrage (i.e. charges that the charterer pays to the ship owner for delay in loading/unloading beyond the time permitted for same under the charter) at the rate of $9,500/day, port expenses, etc.

12.    Pursuant to Clause 23 of the Charter Party, Owner has a right to place a lien on the Cargo for unpaid demurrage.

13.    On or about February 20, 2018, Norden demanded that Spartan remit payment in the sum of $605,126.42 which comprised, *inter alia*, demurrage incurred by Spartan (as of that

date) at the ports of New Magalore, Jairgah and New Haven/Albany, as well as port expenses previously incurred. Norden further advised Spartan that demurrage would continue to accrue at the daily rate of $9,500 through completion of discharge of the Cargo.

14.     Spartan failed to remit the outstanding sum due. As a result, and pursuant to Clause 23 of the Charter Party, on February 27, 2018, Norden gave notice to Spartan that a maritime lien was being asserted over the entire Cargo as security for all sums due through completion of discharge. *See* **Exhibit B** annexed hereto.

15.     On March 12, 2018, Spartan paid the sum of $700,000 to Owner in satisfaction of the sums due Owner for demurrage, port expenses, etc. for the period through March 9, 2018. However, demurrage was continued to accrue since March 9, 2018 and will continue to accrue until the discharge of the Cargo is completed, presently expected not before April 20, 2018.

16.     Accordingly, on March 13, 2018, Notice of Owner's lien on the Cargo for the sums then due and owing, and anticipated to continue to accrue through completion of discharge, was served upon P&M Brick, LLC ("P&M Brick"), the stevedore expected to unload the Cargo at the Port of Coeymans, and Coeymans Recycling Center, LLC ("Coeymans Recycling"), the operator of the warehouses at Coeymans Industrial Park and at 126 Port Road South, Bethlehem, New York where the Cargo was anticipated to be stored upon discharge from the Vessel.

17.     Both P&M Brick and Coeymans Recycling acknowledged receipt of the Notice of Lien and confirmed that they would not release the Cargo without being notified that the lien had been lifted.

18.     On or about March 18, 2018, on instructions from Spartan, the Vessel proceeded to the Port of Coeymans Marine Terminal in Coeymans, New York.

19.    Conditional discharge and delivery of the Cargo commenced on March 19, 2018, by P&M Brick pursuant to a contract entered with Spartan Materials of Albany, LLC ("Spartan Albany"), an affiliate of Spartan.

20.    Following discharge, the Cargo was placed into storage in warehouses at Coeymans Industrial Park and at 126 Port Road South, Bethlehem, New York pursuant to a contract(s) entered between Coeymans Recycling and Spartan Albany.

21.    As set forth in the Notices of Lien, discharge and delivery of the Cargo under the bills of lading was expressly conditioned upon the preservation of all of Owner's rights under the lien over the Cargo remaining in place after the Cargo was transferred ashore.

22.    On March 26, 2018, the Port of Coeymans Marine Terminal advised that it would be suspending discharge of the Cargo as of 1800 hours on Tuesday, March 27, 2018 and the Vessel would be required to depart the berth so that other vessels could be unloaded.

23.    The Vessel departed the berth on Wednesday, March 28, 2018 and is presently at anchor at Highlands anchorage awaiting return to the berth, expected on or about April 9, 2018.

24.    Approximately 17,000 metric tons of the Cargo had been discharged as of March 28, 2017 and is currently being stored at the Coeymans Recycling warehouse facilities.

25.    Once the Vessel returns to the berth it is expected that it will take approximately 7 to 14 additional days to complete discharge of the approximate remaining 8,000 metric tons of Cargo remaining aboard.

26.    Despite service of the Notice of Lien and repeated demands made by Owner, Spartan has refused to pay the outstanding amounts now due to Owner under the Charter Party or provide full security in a form acceptable to Owner in respect to demurrage and other charges which will continue to accrue until completion of discharge.

## THE NEW YORK ARBITRATION

27.   On March 5, 2018, pursuant to Clause 38 of the Charter Party, Owner demanded arbitration of its claims against Spartan, including but not limited to: (a) outstanding demurrage at New Mangalore, Jairgah, New Haven, Albany, Ambrose anchorage and continuing to accrue until the Cargo is fully discharged at Coeymans, New York; (b) extraordinary Disbursement Account (DA) expenses at Albany, Ambrose, and Coeymans; (c) additional bunkers consumed steaming from New Haven to Albany, from Albany to Ambrose, and Ambrose to Coeymans; and (d) pilotage, tugs, etc., plus interest, costs and attorneys' fees.   *See* **Exhibit C** annexed hereto.

28.   In addition, Owner has also demanded New York arbitration for all sums that Owner may be forced to pay in respect to the discharge and storage of the Cargo, should Spartan fail to pay same, until the Cargo may be sold with the sale proceeds to be escrowed as security for Owner's claims in the arbitration.

29.   Owner specifically reserves its right to arbitrate the merits of its dispute with Spartan pursuant to the terms of the Charter Party.

30.   As of the filing of this Complaint, Owner anticipates that the sums which will be claimed as damages in the arbitration total $1,020,542.85, comprising demurrage from March 10, 2018 to April 20, 2018 (net of brokers' commissions); (b) $32,930.00 in port expenses; and (c) $350,000.00 in stevedoring charges to discharge the remaining cargo.   Although duly demanded, payment and/or security for the aforementioned sum has not been received.

31.   In addition, Owner anticipates that, in prosecuting its claims to a final award in New York arbitration, it will incur the sum of $200,000 in arbitrators' and attorneys fees and arbitration costs, plus interest, all of which are recoverable in arbitration.

32.  Plaintiff specifically reserves the right to amend the above figure to include additional sums that may become due and owing under the Charter Party and/or as may be awarded in the New York arbitration.

### REQUEST FOR WARRANT OF ARREST UNDER RULE C

33.  Owner has performed all of the duties and obligations Owner owed to Spartan under the Charter Party and is entitled to the sums set forth above, together with additional demurrage being presently incurred through completion of discharge (expected April 20, 2018), the discharge charges which will accrue between the filing of this Complaint and the entry of judgment and enforcement of Owner's lien, and together with further interest, costs and attorneys' fees incurred in connection with its prosecution of this action.

34.  Owner's maritime lien meets the conditions for an action *in rem* against the Cargo which subjects the Cargo to seizure and sale under Rule C of the Supplemental Rules of Certain Admiralty and Maritime Claims.

WHEREFORE, Plaintiff prays:

1.  That Process *in rem,* pursuant to Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, issue against the Cargo, placing the Cargo under arrest and under the custody and control of the U.S. Marshal, or the Master of the Vessel and Coeymans Recycling, as substitute custodians (as may be ordered by the Court);

2.  The Court direct that the Cargo remaining aboard the Vessel be discharged and stored at the warehouse at Coeymans Industrial Park and/or 126 Port Road South, Bethlehem, New York with the costs of unloading and storing the Cargo during the pendency of these proceedings to be borne by Spartan;

3.      That Owner's lien be declared a valid lien on the whole of the Cargo, and that said maritime lien be declared superior in right and interest to any claim thereon or therein by any other person or entity;

4.      That the Cargo be condemned and sold free and clear of all liens and encumbrances and that the proceeds of said sale be directed to be placed in the Registry of the Court or, alternatively, in the escrow account of the Society of Maritime Arbitrators of New York, and security for Owner's claims as best can currently be estimated in the amount of $1,220,542.85, pending resolution of Owner's claims in New York arbitration;

5.      That process in due form of law according to the practice of this Court issue against Spartan, or any other entity or person claiming an interest in the Cargo, citing it to appear and answer the foregoing, failing which a default may be taken;

6.      That since it appears that the U.S. Marshal's Service lacks sufficient staff to promptly or economically effect service of the Warrant of Arrest upon the Master of the Vessel and/or Coeymans Recycling, and that since appointing a person over 18 years of age and who is not a party to this action will result in substantial economies in time and expense, such a person be appointed pursuant to FED. R. CIV. P. 4(c) to serve the Warrant of Arrest in this action;

7.      That upon arrest of the Cargo this Court retain jurisdiction over the matter through the entry of judgment of the pending claims, including any appeals thereof, and for any further or supplemental proceedings as may be necessary; and

8.      That Plaintiff be awarded such other, further and different relief as the Court deems just and proper in the premises.

Dated: New York, New York
      April 5, 2018

                                      FREEHILL HOGAN & MAHAR, LLP
                                      Attorneys for Plaintiff

By: _____
                            Michael E. Unger
                            Manuel A. Molina
                            80 Pine Street
                            New York, NY  10005
                            (212) 425-1900

481851.1

## ATTORNEY VERIFICATION

State of New York  )
         ) ss.:
County of New York )

   Michael E. Unger, an attorney at law, duly admitted to practice in the Courts of the State of New York, affirms under penalty of perjury as follows:

   1.  I am the attorney for the Plaintiff in this matter and have read the foregoing Verified Complaint, know the contents thereof and upon information and belief, I believe the matters alleged therein to be true.

   2.  The reason this Verification is made by me and not by the Plaintiff is because the Plaintiff resides in a foreign country.

   3.  The source of my information and the grounds for my belief are communications, papers and reports contained in my file and provided to me by our client.

                  _____
                    Michael E. Unger

Sworn to before me this
5th day of April 2018

_____
NOTARY PUBLIC

CLARE HENRY
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Commission Expires October 31, 2021

481851.1             10